FILED
CLERK, U.S. DISTRICT COURT

MAR 3 1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

WARNER BROS. RECORDS INC., et al., )          No. CV 08-335-VBF (PLAx)

     Plaintiffs,  )          **ORDER RE MOTIONS TO COMPEL**
         )          **PRODUCTION OF DOCUMENTS FILED BY**
   v.     )          **PLAINTIFFS AND DEFENDANT**
         )
SEEQPOD, INC.,    )
         )
     Defendant.  )
_____)

  In this action, plaintiffs have sued defendant for copyright infringement arising from defendant allegedly providing its Internet users with access to music without license or authorization.  According to plaintiffs, this infringement is accomplished by defendant both when it plays digital streams of copyrighted works for its users, and by providing its users with links to websites from which defendant has drawn the music.  Those websites, plaintiffs assert, also are engaged in the unauthorized dissemination of sound recordings.  Plaintiffs further contend that since defendant targets a particular type of content -- music, which defendant knows is "overwhelmingly copyrighted and posted without authorization from copyright owners" (Complaint, ¶ 21) -- defendant is not a mere search engine, nor does it screen out search terms that seek the copyrighted works of plaintiffs or other copyright holders.  Complaint, ¶ 22.  The Complaint contains allegations of both direct and secondary infringement.

Defendant, on the other hand, asserts that it is a "playable search" engine company, i.e., it enables consumers to search the Internet for "playable media," including both audio and video. It contends that because there is an "inherent difficulty facing search engines on the Internet -- because they cannot make an automated determination of whether any given file they are indexing is authorized by the copyright owner or not" (Joint Stip. Re: plaintiffs' Motion to Compel, at 4) -- Congress passed the Digital Millennium Copyright Act ("DMCA") which contains "safe harbors" for "information location" tools, such as defendant. Defendant further asserts that fair use protects its activities, and that it has taken down links to allegedly unauthorized material when notified by the Recording Industry Association of America ("RIAA"). Here, however, instead of providing a takedown notice, plaintiffs filed this action against defendant.

In seeking discovery prior to an anticipated motion for a preliminary injunction, plaintiffs served requests for production of documents on defendant. Not satisfied with the responses, plaintiff moved to compel further production ("plaintiffs' Motion"). Defendant also served document requests on plaintiffs, the responses to which defendant asserts are "severely deficient." It filed a Motion to Compel as well ("defendant's Motion"). The Court has concluded that oral argument will not be of material assistance in determining either plaintiffs' Motion or defendant's Motion. Accordingly, the hearings scheduled for April 8, 2008, are **ordered off calendar** (see Local Rule 7-15).

As a preliminary matter, plaintiffs and defendant assert largely the same objections to the other side's Requests, and to each of the individual Requests. Unless noted below in the discussion of the individual Requests, the Court addresses those objections as a unit. First, with the exceptions noted below, the Court overrules many of the parties' objections that the Requests would result in undue burden and expense, and that they are overly broad, as those objections for the most part do not reveal sufficient substantiation or explanation. It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery. See, e.g., Smith v. B & O Railroad Co., 473 F.Supp. 572, 585 (D. Md. 1979); Sherman Park Community Association v. Wauwatosa Realty Co., 486 F.Supp. 838, 845 (E.D. Wis. 1980); Laufman v. Oakley Building and Loan Co., 72 F.R.D. 116, 121 (S.D. Ohio 1976). The parties

1   cannot simply invoke generalized objections; rather, with respect to the discovery requests, the

2   objecting party

> must show specifically how, despite the broad and liberal construction
> afforded the federal discovery rules, each [request] is not relevant or
> how each [request] is overly broad, burdensome or oppressive by
> submitting affidavits or offering evidence revealing the nature of the
> burden.

6   Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D. Pa. 1980) (citations omitted); Wirtz

7   v. Capitol Air Service, Inc., 42 F.R.D. 641, 643 (D. Kan. 1967).  For a burdensomeness argument

8   to be sufficiently specific to prevail, it must be based on affidavits or other evidence showing the

9   exact nature of the burden.  Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co., 109

10   F.R.D. 12, 24 (D. Neb. 1983) (party objecting to production requests must specify why the

11   requests are objectionable); Roesberg, 85 F.R.D. at 296-97.  Here, defendant has submitted the

12   declaration of Andrew Leibnitz, an attorney for defendant, in opposition to plaintiffs' Motion.  Mr.

13   Leibnitz asserts that he has overseen tests on defendant's documents to assess the burden of

14   performing the keyword searches of various words that would be needed to respond to plaintiffs'

15   Requests.  The analysis shows that, depending on the keyword, anywhere from 30,000 to close

16   to 100,000 documents would need to be reviewed by defendant prior to production, and that

17   reviewing the identified documents would involve hundreds of person-days at a cost of hundreds

18   of thousands of dollars.  Leibnitz Dec., ¶¶ 2-5.  Defendant also submitted the declaration of

19   Kasian Franks, its Chief Executive Officer.  Mr. Franks represents that his team is gathering

20   various documents for production, including defendant's "business and marketing plans, investor

21   presentations, versions of its website, its server cache index, redacted server logs, DMCA notices,

22   DMCA takedown source code and procedures, and documents regarding its widget products."

23   He indicates that these materials will amount to tens of thousands of pages, will require hundreds

24   of person-hours to assemble and will create a "significant financial drain" on defendant's budget.

25   Franks Dec., ¶ 4.  Defendant is also making its entire server cache available to plaintiffs at

26   plaintiffs' expense.  Id., ¶ 5.  He notes that any additional information that the Court would order

27   "could risk bringing [defendant's] business to a virtual standstill and place in jeopardy [defendant's]

28   ongoing business and technological development efforts."  Id., ¶ 6.

1          Plaintiffs have submitted the declaration of Silda Palerm, an attorney for Warner Music

2    Group Corp., in opposition to defendant's Motion. Ms. Palerm explains that three of the plaintiffs

3    in this action are also plaintiffs in a case pending in the Southern District of New York, Arista

4    Records LLC, et al. v. LimeWire LLC, et al., No. 06-Civ-5936 (GEL) ("the LimeWire case"), which

5    involves allegations that the defendants therein are liable for secondary copyright infringement

6    for operating a website that facilitates infringement of copyrighted sound recordings over the

7    Internet. Palerm Dec., ¶ 3. In that case, in response to discovery requests, the Warner plaintiffs

8    captured and examined electronic documents for the time period from January 1, 1999, through

9    May, 2007, as well as hard copy documents for the period from January 1, 1999, through August

10    2007. They reviewed over 3.7 million pages of documents and produced over one million pages

11    to the defendants in that case. In addition, documents relating to Warner's strategies and

12    practices concerning distribution of works over the Internet were produced. Counsel and staff

13    spent over 5,000 hours to produce these documents. Id., ¶ 5. Production of documents

14    responsive to defendant's requests herein would "overlap almost entirely or completely with the

15    collections that [plaintiff] Warner already has undertaken" in the LimeWire case. Id., ¶ 7. Counsel

16    estimates that an order in this case requiring a search just for documents **after** the time frame

17    examined in the LimeWire case would still involve a review of over 300,000 pages of documents

18    and hundreds of hours of time. Id., ¶ 8.

19          While the Court, below, has concluded that the burden identified by both plaintiffs and

20    defendant is sufficient in some instances to warrant a narrowing of the Requests, even if the

21    responding party has made a showing of burdensomeness the "fact that production of documents

22    would be burdensome and . . . would hamper the party's business operations may not be a

23    reason for refusing to order production of relevant documents." 7 Moore's Federal Practice, ¶

24    34.14[3], at 34-75 (Matthew Bender 2004); see also Kozlowski v. Sears, Roebuck & Co., 73

25    F.R.D. 73, 76 (D. Mass. 1976). Nevertheless, even though the Court does not adopt in full either

26    sides' burdensomeness objections, some of the discovery requests are overbroad on their face.

27    As set forth below, the Court will modify those discovery requests to eliminate their overbreadth.

28          As for the objection that the information sought by the other side is not relevant, discovery

1  under Fed.R.Civ.P. 26(b)(1) is permitted of "any nonprivileged matter that is relevant to any party's

2  claim or defense."  Federal Rule of Civil Procedure 26(b) is to be "liberally interpreted to permit

3  wide-ranging discovery of information," even if that information is not ultimately admitted at trial.

4  See Comcast of Los Angeles, Inc. v. Top End International, Inc., 2003 WL 22251149, at *2 (C.D.

5  Cal. July 2, 2003); see also Fed.R.Civ.P. 26(b)(1) ("[r]elevant information need not be admissible

6  at trial if the discovery appears reasonably calculated to lead to the discovery of admissible

7  evidence.").  The burden is on the objecting party to show that discovery should not be allowed

8  (Comcast, 2003 WL 22251149, at *2, citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th

9  Cir. 1975)).  Plaintiffs contend that the documents they seek are relevant to determine, among

10  other things, their claims for direct and secondary copyright infringement, whether defendant

11  stores infringed copies of works on its servers, how playlists are used to grow defendant's user

12  base, defendant's knowledge of the copyrighted nature of the works, and its intent to induce

13  infringement.  Defendant claims that the documents it seeks are relevant to show, among other

14  things, the validity of its playable search model of business, the harm to plaintiffs (or lack of harm)

15  from streaming, and its safe harbor defense.  While it is not the role of the Court in ruling on these

16  Motions to determine what evidence the District Judge will actually allow in at a hearing

17  concerning a preliminary injunction in this case (see, e.g., Colonial Life & Accident Insur. Co. v.

18  Superior Court of Los Angeles County, 31 Cal.3d 785, 791, n. 8 (1982) (quoting Pacific Tel. & Tel.

19  Co. v. Superior Court, 2 Cal.3d 161, 172-73 (1970) ("[Courts] may appropriately give the applicant

20  [for discovery] substantial leeway, especially when the precise issues of the litigation of the

21  governing legal standards are not clearly established [citation]; a decision of relevance for

22  purposes of discovery is in no sense a determination of relevance for purposes of trial") (brackets

23  in original))), the Court nevertheless has balanced the degree of relevance of the Requests

24  against the burden involved in production of the requested documents.

25       Next, while the Court recognizes that in some instances a discovery request may be so

26  vague or ambiguous as to not allow a response (see, e.g., Dubin v. E.F. Hutton Group Inc., 125

27  F.R.D. 372, 376 (S.D.N.Y. 1989)), such is not the case here.  Rather, the Court finds that the

28  terms used by both plaintiffs and defendant in their Requests are not presented in a vague or

5

ambiguous manner, and can readily be responded to using the common and ordinary meanings of those terms.   They do not involve matters of opinion, are not dependent on subjective standards of measurement, and provide a reasonably clear indication of the information being sought.  In order to aid the quest for relevant information, the parties should not seek to evade disclosure by quibbling and objection.

The parties also assert the attorney-client privilege as to the documents.  An entity that withholds discovery materials based on a privilege must provide sufficient information (i.e., a privilege log) to enable the requesting party to evaluate the applicability of the privilege or other protection. Fed.R.Civ.P. 26(b)(5); see Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  Failure to provide sufficient information may constitute a waiver of the privilege. See Eureka Financial Corp. v. Hartford Acc. & Indem. Co., 136 F.R.D. 179, 182-83 (E.D. Cal. 1991) (a "blanket objection" to each document on the ground of attorney-client privilege with no further description is clearly insufficient); Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984) (attorney-client privilege waived when defendant did not make a timely and sufficient showing that the documents were protected by privilege).  Asserting a "blanket objection" to document requests will be found to be insufficient and improper.  Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (blanket privilege objection is improper); see Clarke, 974 F.2d at 129 (blanket assertions of privilege are "extremely disfavored").  The attorney-client privilege applies only when "(1) legal advice is sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) are made in confidence (5) by the client." Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995).  The parties have set forth no evidence establishing that counsel was contacted for the purpose of providing legal advice about any of the matters to which they are objecting.  Thus, the purpose of the privilege -- to protect disclosures necessary to obtain informed legal advice and to encourage "full and frank disclosure by the client to his or her attorney" -- has not been shown to be implicated here.  Clarke, 974 F.2d at 129.  While plaintiffs indicate that they prepared a privilege log in connection with the production in the LimeWire case, and would prepare another log if additional discovery is ordered, neither side submitted a privilege log to the Court, and the Court will not sustain an objection by

1  either party on this ground as it is not abundantly clear that the privilege attaches to any of the
2  requested documents.

3      Neither can the Court conclude that the work product doctrine protects any of the requested
4  documents. Rule 26(b)(3) of the Federal Rules of Civil Procedure may "protect against disclosure
5  of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . .
6  concerning the litigation." The work product doctrine "is intended to preserve a zone of privacy
7  in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward
8  litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d
9  1194, 1196 (2nd Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed.
10 451 (1947)). Furthermore, "[t]o be entitled to the protection of the work product rule, the material
11 must have been generated in preparation for litigation. The prospect of future litigation is
12 insufficient." Whitman v. United States, 108 F.R.D. 5, 9 (D.N.H. 1985). No showing that
13 documents were generated in preparation of litigation has been made here; accordingly, this
14 doctrine does not shield the requested documents.

15     Objections that documents are confidential and/or proprietary and/or contain private
16 information also do not warrant refusal to produce the requested documents. The Court has
17 balanced the asserted right to confidentiality against the relevance of the information being sought
18 by the parties. See, e.g., Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992); Ragge
19 v. MCA/Universal Studios, 165 F.R.D. 601, 604-05 (C.D. Cal. 1995) (the right to privacy is not
20 absolute, but is "subject to invasion depending upon the circumstances"). The Court finds that
21 the discovery needs here outweigh the undefined privacy concerns of the objecting parties. Prior
22 to production, the parties may seek the entry of a protective order that will strike the appropriate
23 balance between the need for the information and the privacy concerns. See, e.g., Knoll v.
24 American Tel. & Tel. Co., 176 F.3d 359, 365 (6th Cir. 1999) (approving of protective orders to
25 protect non-parties from "the harm and embarrassment potentially caused by nonconfidential
26 disclosure of their personnel files").

27     With the above background, framework and discussion in mind, the Court rules on the
28 specific Requests presented in the Motions as follows:

7

**PLAINTIFFS' MOTION**

**Request for Production No. 1**: **granted in part**

Plaintiffs seek information concerning how defendant's technology operates, which they assert is relevant to their claims of both direct and secondary copyright infringement. For example, if the allegedly infringing works are stored on defendant's computers, and then communicated to the computers of defendant's users, infringement may be established. <u>See</u>, e.g., <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1160 (9th Cir. 2007). Plaintiffs also seek defendant's entire source code in order to have "visibility" into how the system works. Defendant counters that this Request effectively seeks nearly every document in its possession, that the source code is kept "under the highest degree of protection," and that the source tree incorporates millions of medical documents. Defendant has agreed to produce, among other things, its website, to make available to plaintiffs its entire server cache and its server logs, and is describing all of the activities undertaken on its servers. It is also producing its DMCA "takedown" code. The Court concludes that as defendant has shown the degree of burden associated with producing the entire source code, and plaintiffs have not explained how the entire code's production would enable them to meet their burden at this stage of the litigation, or why the documents that defendant has agreed to produce will not enable plaintiffs to do so, production of the entire code will not be ordered. Nevertheless, in addition to the promised documents (<u>see</u> Franks Dec., ¶¶ 4-5), defendant shall produce any documents that describe -- not through code or algorithm, but through prose -- the technical designs, features or operations of its service, <u>e.g.</u>, a description from a provider seeking to establish defendant's service that describes the features of the proposed service; a description of the service produced internally.

**Request for Production No. 2**: **granted in part**

Plaintiffs seek all documents referring or relating to materials that have been uploaded, stored, played, streamed or downloaded through defendant's service, including those documents relating to material that has been stored on defendant's search engine cache. Defendant argues that its search engine cache changes from second to second, and that it has agreed to produce

1 | an index of its search engine cache (which "evidences every work streamed by users using the
2 | Internet Explorer browser and the Adobe Flash Player;" Franks Dec., ¶ 5), and documents
3 | showing the works that it has streamed since its launch, including its server logs ("describing all
4 | of the activities undertaken on [defendant's] servers by its users;" id., ¶ 5). While the documents
5 | that defendant has agreed to produce herein are relevant to plaintiffs' case, and must be
6 | produced, defendant has shown to the Court's satisfaction that to produce all documents based
7 | on a search conducted through certain generic search terms would be unduly burdensome to
8 | defendant. See Leibnitz Dec., ¶ 3. Accordingly, no further production will be ordered.

9 |

10 | **Request for Production No. 3: granted in part**

11 | This Request seeks documents referring or relating to the use by defendant or its users
12 | of content protected by copyright law, including documents that relate to the "possibility" that such
13 | content "could be or could have been" used. This latter portion of the request is too speculative
14 | to warrant an order to compel. But documents showing defendant had knowledge of any allegedly
15 | infringing activity are clearly relevant to plaintiffs' claims. Defendant contends that plaintiffs have
16 | not provided ownership documents for the works that they allege are protected by copyright, and
17 | defendant thus cannot meaningfully produce responsive documents. The Court agrees with
18 | plaintiffs that defendant's offer to produce an index of its search engine cache is insufficient in this
19 | instance, as it would not encompass such documents as e-mails and letters referencing
20 | copyrighted materials. As such, **upon plaintiffs providing defendant with a list of its protected**
21 | **content**, defendant shall perform a keyword search for "copyright!" and produce all responsive
22 | documents **that concern plaintiffs' copyrighted content**. Defendant has not shown that the
23 | burden associated with this particular search outweighs the need for plaintiffs to obtain relevant
24 | documents.

25 | /
26 | /
27 | /
28 | /

**Request for Production No. 4: granted in part**

To the extent the documents requested herein are not within the possession, custody or control of defendant, production will not be ordered. However, any documents in defendant's possession, custody or control that refer to or reveal its users' playlists, **and those playlists contain copyrighted material**, or that refer or relate to the reasons behind its offering of playlists, must be produced.

**Request for Production No. 5: granted in part**

Defendant has represented that it will produce "representative documents relating to any notifications by the RIAA, the Warner Music Group, Sony/BMI or Columbia" to defendant regarding the subject matter of this lawsuit. It must now do so. In addition, responsive documents referring or relating to any of the named plaintiffs must also be produced.

**Request for Production No. 6: granted in part**

Defendant has represented that it will produce representative documents "evidencing its business and marketing plans, to the extent such documents exist." It must now do so. To the extent defendant also has e-mails, letters, memoranda, and other such documents that discuss its business model **relating to the use of copyrighted material**, such documents must also be produced.

**Request for Production No. 7: granted in part**

Defendant initially represented that it will produce "representative investor presentations relating to this lawsuit, the RIAA or copyright law;" it then indicated that it would produce its presentations and not limit them to this lawsuit, the RIAA, or copyright law. These latter documents must be produced. In addition, any communications between defendant and any actual or potential investor (a potential investor being an individual or entity from whom or which defendant sought an investment, or who approached defendant inquiring about investing) that

1  discuss or refer to the use of copyrighted material by defendant or its users must also be
2  produced.

3

4  **Request for Production No. 9: granted in part**

5      This Request seeks documents relating to defendant's website.  Defendant objects for a
6  number of reasons, including that its website "changes from second to second."  It represents that
7  it will produce "representative documents sufficient to show its website on or around the date of
8  the filing of the complaint in this lawsuit."  Plaintiffs contend that defendant has been changing its
9  website to cleanse any admissions that might have been contained therein, and to show its
10  consciousness of guilt. Defendant must produce responsive documents showing its website (but
11  excluding the opening "PodCrawler" page), as the website existed: 1.  on or around two months
12  prior to the filing of the complaint in this lawsuit; 2.  on or around the date of the filing of the
13  complaint in this lawsuit; 3.  on or around a date two months prior to the date of this Order; and
14  4. as of the date of this Order.

15

16  **Request for Production No. 10: granted in part**

17      Defendant has represented that it will produce a "representative source tree that
18  demonstrates how [defendant] disables access to material in response to takedown notices from
19  copyright holders and for manually reviewing DMCA takedown notices."  As the requested
20  documents would show defendant's ability to supervise infringement on its site, and may reveal
21  what defendant does do to police its site, they are relevant to plaintiffs' claims and must be
22  produced.  But plaintiffs are also entitled to documents relating to defendant's consideration of
23  methods to identify, remove and filter material, even if those methods were not adopted by
24  defendant.  Such documents must also be produced.

25

26  **Request for Production No. 13: granted in part**

27      In response to this Request, defendant indicated that it would produce a "representative
28  server log with personal user information and other identifying information redacted."  Plaintiffs

1  contend that the information sought herein would show the activities of defendant's users on its
2  site. Defendant has agreed to produce its server logs, which it contends is "more than sufficient
3  to show the activities of its users." The server logs must be produced, but defendant may redact
4  the user I.P. addresses, individual users' personal names, e-mail addresses, passwords, or other
5  personal user account information.

7  **Request for Production No. 14: granted in part**
8      This Request seeks documents pertaining to communications between defendant and any
9  third party website. Defendant must produce responsive documents, limited to communications
10 that pertain to the copyrighted nature of the material on defendant's website.

12         **DEFENDANT'S MOTION**
13 **Request for Production No. 2: granted in part**
14     In this Request, defendant seeks all documents relating or referring to plaintiffs' rights to
15 any works in which defendant allegedly has infringed a copyright. Plaintiffs represented that it
16 would produce certificates of registration for a "substantial number" of its copyrighted works, but
17 would not produce all documents for all of its works as "ownership of a significant number of
18 protected works is not subject to reasonable dispute by" defendant. As ownership of the allegedly
19 infringed material must be shown to establish direct infringement (see Perfect 10, Inc., 508 F.3d
20 at 1159), and plaintiffs have the burden of showing a likelihood of success on the merits to obtain
21 preliminary injunction relief (id., at 1158), plaintiffs must produce, at a minimum, certificates of
22 ownership for each allegedly infringed work. Those certificates raise a presumption of ownership.
23 See 17 U.S.C. § 410(c). It is not sufficient to produce the certificates just for "thousands of
24 individual songs," if plaintiffs are claiming the existence of other infringed works. Here, there is
25 no assertion by defendant that would raise a serious question as to the validity of plaintiffs' claims
26 of ownership in the works in question. As such, discovery beyond the certificates is not warranted
27 at this stage. Neither are further documents required at this stage relating to licenses to the
28 compositions of the works, as "[s]ound recordings and their underlying compositions are separate

12

works with their own distinct copyrights." <u>Newton v. Diamond</u>, 388 F.3d 1189, 1191 (9th Cir. 2004), citing 17 U.S.C. § 102(a)(2), (7).

**Request for Production No. 3: granted in part**

This Request seeks all documents relating to alleged violations by defendant or its users of plaintiffs' rights, including documents that plaintiffs may use to support their claims in this litigation.  Plaintiffs indicated that they would provide all non-privileged documents in their possession, custody or control that they will rely on to support their motion for preliminary injunction.  Defendant is entitled to more, even at this stage. The Court finds that this Request reasonably calls for plaintiffs to also produce any documents that would refute plaintiffs' allegations that defendant has infringed on plaintiffs' copyrights; all such documents, as well as all documents that refer in any way to defendant, must be produced.[1]

**Request for Production No. 4: granted in part**

This Request seeks documents concerning content that plaintiffs have voluntarily made available on the Internet for streaming or downloading, and regarding their decisions to make such content available, in order for defendant to show, among other things, that defendant can build its business based on authorized content, that it is entitled to link to such authorized content, and the extent of harm to plaintiffs, if any.  Plaintiffs object on relevance grounds since the existence on the Internet of some free music, even if placed there by plaintiffs, and even if the amount of such music is increasing, would not justify defendant's infringing of music that it is not authorized to play.  Plaintiffs also claim that since defendant serves as more than a link to music files, but plays copyrighted music as well, the documents sought herein are irrelevant to the claims and

---

[1]    Although plaintiffs indicate that, to respond to this Request, they would produce documents previously produced by them in the <u>LimeWire</u> case, reliance on those documents is appropriate only if those documents are also responsive to this Request.  While plaintiffs made such a showing as to some of Requests Nos. 4-12 (<u>see infra</u>), they did not do so as to this Request.

defenses in this action; and it would be unduly burdensome for plaintiffs to respond to the Request. Plaintiffs raise similar arguments concerning Requests Nos. 5-11.

This action concerns plaintiffs' allegations that defendant violates copyright law by publicly performing music files, copying files onto its server cache, and giving its users links to locations containing unauthorized copies of copyrighted music. Much of the information sought by defendant in Requests Nos. 4-11 is either not relevant to those claims, or only marginally relevant to legitimate defenses that defendant may offer at this stage of the proceedings. Whether or not plaintiffs authorize others to use their content does not negate the allegation that defendant is allegedly using that same content in an unauthorized manner. Neither does the DMCA safe harbor appear to apply to a situation where the information location tool not only provides links, but also performs and copies the works that it links to, as alleged here. See 17 U.S.C. § 512(d). Neither does the issue of whether plaintiffs will be irreparably harmed without injunctive relief warrant production other than that ordered herein, as the impact on plaintiffs' sales may not be dispositive, since the infringement of the type alleged here could "eviscerate" plaintiffs' ability to protect their property rights. See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1218 (C.D. Cal. 2007).[2] Neither has defendant shown that the documents would support a fair use defense, as the alleged playing and copying of protected works does not appear to be "transformative" (see Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright")); or that plaintiffs making copyrighted material available without digital or other protection would justify defendant's alleged infringement. On the other hand, plaintiffs have shown to the Court's satisfaction the burden that would be involved in producing the requested documents from scratch, especially when, as to most of defendant's Requests Nos. 4-12, plaintiffs have shown the overlap between the requests

---

[2]   However, to the extent plaintiffs intend to show financial harm from defendant's actions -- and plaintiffs have not represented that they will not make such an argument at the preliminary injunction stage -- documents concerning plaintiffs' streaming of content on the Internet gain relevance. As such, if plaintiffs intend to show financial harm, they should be prepared to produce additional responsive documents.

in the LimeWire case and those in this case.  That overlap, the burden to start production from scratch, and the minimal relevance of many of the requested documents warrant against production beyond the LimeWire documents, supplemented by a search from May, 2007 (for electronic documents) and August, 2007 (for hard copy documents) to the present, as those responsive documents relate to defendant (hereinafter referred to as the "supplemented LimeWire documents").[3]  Defendant has not convinced the Court that the LimeWire documents are inadequate.

Accordingly, as for this Request, the Court concludes that at this stage of the proceedings plaintiffs will not be ordered to produce all documents that may or may not validate defendant's business model; neither must they show the entirety of the free streams offered by them on the Internet.  Instead, the Court, in addition to the supplemented LimeWire documents, orders production of responsive documents to the extent the documents relate to content that plaintiffs specifically allege has been infringed upon by defendant, i.e., if plaintiffs allege that defendant has infringed on a certain protected work, they must produce documents regarding their voluntarily making available that work on the Internet for streaming or downloading, and regarding their decision to make that work available.

**Request for Production No. 5: granted in part**

This Request seeks documents relating to Internet services, including communications with and plans concerning search engines and other online entities.  To the extent such documents, even as now limited by defendant (documents concerning entities that go to digital music, caching and search technology) may be relevant to this action, the Court finds that the supplemented LimeWire documents satisfy plaintiffs' burden of production, as long as the following entities were included in the entities in the LimeWire Request No. 74 and/or No. 75: MySpace, Facebook,

---

[3]   Plaintiffs may rely on the production of the supplemented LimeWire documents as ordered herein only to the extent plaintiffs produce those documents either "as they are kept in the usual course of business," or in such a manner that they are organized and labeled to correspond with the particular Requests herein.  Fed.R.Civ.P. 34(b)(2)(E)(i).

BrightCove, Akamai, Google, and Limelight Networks.  To the extent any of the entities was not included, plaintiffs shall produce responsive documents pertaining to each of the not-included entities for the time frame of January 1, 2005, through the present.

**Request for Production No. 6: denied**

This Request seeks documents concerning the technical aspects of plaintiffs' websites, which defendant contends are relevant to show that it does not interfere with standard technical measures to identify or protect copyrighted works as required under the DMCA; to show that plaintiffs have not made efforts to protect their works from unauthorized activity (and thus there are measures available to plaintiffs that are less burdensome than an injunction); and to show fair use. While the Court finds that in this instance the overlap between the requests in the LimeWire case and this case is not sufficient to rely on the production in that case, the Court finds, for the reasons set forth by plaintiffs (see Joint Stip., defendant's Motion, at 42-44) that the information requested herein is not relevant to the claims or defenses in this action, or reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 7: granted in part**

This Request seeks all licenses or agreements relating to the use of plaintiffs' content on the Internet.  While the material sought herein is of limited relevance to this action, the Court finds that the overlap between the documents produced in the LimeWire case and those requested here is such that the supplemented LimeWire documents will be deemed a sufficient response herein.

**Request for Production No. 8: granted in part**

This Request seeks all documents relating to plaintiffs' digital business strategy, based on defendant's claim that the documents will show whether plaintiffs have suffered any harm from defendant's actions.  The Court finds that the overlap between the documents produced in the

1  LimeWire case and those requested here is such that the supplemented LimeWire documents
2  will be deemed a sufficient response herein.

3

4  **Request for Production No. 9: granted in part**

5  This Request seeks documents relating to any harm suffered by plaintiffs from online
6  activity caused by, among others, defendant, or by the streaming, downloading, searching for, or
7  caching of content on the Internet.  Plaintiffs indicate that they will produce all non-privileged
8  documents in their possession, custody or control that they will rely on in support of their motion
9  for preliminary injunction against defendant, but will not search for documents that do not refer
10 to or discuss defendant. Based on its review of the overlap between the production of documents
11 in the LimeWire case and those documents requested by defendant here, and the minimal
12 relevance of responsive documents that do not relate to defendant itself, the Court will deem
13 plaintiffs to have responded to this Request upon their production of the supplemented LimeWire
14 documents.

15

16 **Request for Production No. 10: granted in part**

17 This Request seeks documents relating to technologies that can be used by copyright
18 owners to regulate online copyright infringement, which defendant asserts could show that
19 plaintiffs have failed to protect their content, which in turn could support defendant's defenses and
20 impact on the issue of injunctive relief.  In light of the overlap between the production of
21 documents in the LimeWire case and those requested by defendant here, and the minimal
22 relevance of responsive documents that do not relate to defendant itself, the Court will deem
23 plaintiffs to have responded to this Request upon their production of the supplemented LimeWire
24 documents.

25

26 **Request for Production No. 11: granted in part**

27 This Request seeks documents relating to websites that post unauthorized content, which
28 defendant claims is integral to the scope of any injunctive relief.  To the extent there is any

relevance to whether plaintiffs are aware of and have pursued other alleged copyright infringers, based on its review of the overlap between the production of documents in the <u>LimeWire</u> case and those requested by defendant here, and the minimal relevance of responsive documents that do not relate to defendant itself, the Court will deem plaintiffs to have responded to this Request upon their production of the supplemented <u>LimeWire</u> documents.

**Request for Production No. 12: granted in part**

This Request seeks all documents and communications between plaintiffs and the RIAA or any person that has an interest in the outcome of this lawsuit, including documents relating to issues of copyright infringement. Plaintiffs contend that this Request is moot, as defendant indicated at the "meet and confer" session that it sought the corporate relationship between the various plaintiffs, which plaintiffs have agreed to provide. The Court orders this production. To the extent there is any relevance to the requested communications between plaintiffs and others, based on its review of the overlap between the production of documents in the <u>LimeWire</u> case and those requested by defendant here, and the minimal relevance of responsive documents that do not relate to defendant itself, the Court will deem plaintiffs to have responded to this Request upon their production of the supplemented <u>LimeWire</u> documents.

**Request for Production No. 13: granted in part**

This Request seeks information concerning plaintiffs' personnel responsible for digital business. Plaintiffs have represented that they will produce an organization chart showing the group of employees who deal with digital strategy and business development. The Court hereby orders this production.

<u>ORDER</u>

Based on the foregoing, it is **ordered** that plaintiffs' Motion to Compel is **granted in part and denied in part**, as set forth above, and defendant's Motion to Compel is **granted in part** and **denied in part**, as set forth above. No later than 15 business days from the filing date of this

1  Order, defendant and plaintiffs shall each complete[4] their respective production of all responsive
2  documents, as detailed above.

3        **The Court will consider making the production subject to an appropriately drafted**
4  **protective order,[5] which the parties may submit to the Court for approval prior to the**
5  **production of these documents.**

6

7  DATED: March 31 , 2008

8                             PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE

---

[4]   The Court encourages the parties to produce documents on a "rolling" basis, as soon as available, and not to wait until the 15th business day to produce all documents.

[5]   The Court advises that it will enter a protective order only upon a showing of good cause. Phillips v. G.M. Corp., 307 F.3d 1206, 1209 (9th Cir. 2002) (Rule 26(c) requires a showing of "good cause" for a protective order); Makar-Wellbon v. Sony Electronics, Inc., 187 F.R.D. 576, 577 (E.D.Wis. 1999) (even stipulated protective orders require good cause showing). In any stipulated protective order submitted to the Court, the parties must include a statement demonstrating good cause for entry of a protective order pertaining to the documents or information described in the order.  The paragraph containing the statement of good cause should be preceded by a heading stating: "GOOD CAUSE STATEMENT."